IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 25, 2016

**STATE OF TENNESSEE v. TODD DEWAYNE SCRUGGS**

**Appeal from the Circuit Court for Bedford County**
**No. 18115    Forest A. Durard, Jr., Judge**
_____

**No. M2016-00558-CCA-R3-CD – Filed October 28, 2016**
_____


The defendant, Todd Dewayne Scruggs, was convicted of selling and delivering heroin and possessing drug paraphernalia, for which he received an effective sentence of twenty-six years. The defendant appeals his convictions, challenging the sufficiency of the evidence and his sentence. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

J. Ross Dyer, J., delivered the opinion of the court, in which James Curwood Witt, Jr. and Robert L. Holloway, Jr., JJ., joined.

M. Wesley Hall IV, Unionville, Tennessee, for the appellant, Todd Dewayne Scruggs.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Robert J. Carter, District Attorney General; and Michael Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual and Procedural Background*

This case arises as the result of a controlled buy of heroin conducted by the Seventeenth Judicial District Drug Task Force on March 18, 2015. Timothy Miller, the assistant director of the task force, set up and monitored the controlled buy, and Kenneth Davis served as the confidential informant. Assistant Director Miller first met Mr. Davis after an investigation into a reported drive-by shooting. During the investigation, officers found paraphernalia associated with growing psilocybin mushrooms inside Mr. Davis' home. Assistant Director Miller assisted with the investigation and talked to Mr. Davis

about serving as a confidential informant in exchange for potential leniency from the district attorney on his inevitable drug charges. Mr. Davis agreed to cooperate.

A few weeks later, Mr. Davis informed Assistant Director Miller that he could buy three grams of heroin from the defendant for $500. On March 18, 2015, Mr. Davis told Assistant Director Miller the transaction had been scheduled and would go forward at his house. Assistant Director Miller photocopied the money to be used during the sale and met Mr. Davis to prepare for the transaction. Assistant Director Miller searched Mr. Davis, put a recording device on his body, and gave him twenty-five twenty dollar bills to use for the controlled buy. Mr. Davis did not have any heroin or extra cash hidden on his body. Mr. Davis did have a digital scale in his pocket that Assistant Director Miller allowed him to retain for use when purchasing the heroin. Assistant Director Miller then parked his unmarked vehicle in a nearby driveway where he had a clear view of Mr. Davis' home. Assistant Director Miller brought a handheld video camera with him so he could record the controlled buy.

When Assistant Director Miller saw a maroon Buick pull into Mr. Davis' driveway, he began to film. The transaction was also audio-recorded using the device Assistant Director Miller secured to Mr. Davis' body. There were three people inside the Buick, and Assistant Director Miller observed the defendant get out of the front passenger side of the vehicle and greet Mr. Davis in the driveway. Mr. Davis and the defendant then walked to the side of the house, and the defendant pulled heroin out of his pocket and placed it on a lawnmower. Mr. Davis and the defendant attempted to weigh the heroin using Mr. Davis' digital scale, but they could not get an accurate weight due to the wind. The defendant then took the scale and heroin back to his car. Eventually, the defendant returned to the side of the house, and using his scale, Mr. Davis was able to confirm the heroin weighed between 3.1 and 3.3 grams. Satisfied with this amount, Mr. Davis gave the defendant $500 and put the heroin and digital scale into his pocket. The defendant returned to the Buick and left. Mr. Davis walked to the front of his house, where he sat in a chair and waited on Assistant Director Miller. Mr. Davis remained in Assistant Director Miller's sight at all times.

When the Buick pulled out of the driveway, Assistant Director Miller radioed Agents Joe Ramirez and Shane George, who were assisting with the operation. Agents Ramirez and George began to follow the Buick in separate unmarked vehicles for the purpose of initiating a traffic stop and ultimately arresting the defendant. Assistant Director Miller then met Mr. Davis on his front porch, and the men entered Mr. Davis' home together. Inside, Mr. Davis gave Assistant Director Miller the heroin purchased from the defendant. Assistant Director Miller thoroughly searched Mr. Davis for a second time and removed the recording device. Mr. Davis did not have any excess

heroin or cash hidden on his body. Mr. Davis then debriefed Assistant Director Miller on the details of the transaction.

While Assistant Director Miller met with Mr. Davis following the transaction, Agents Ramirez and George stopped the Buick at a nearby intersection. Agent George approached the driver's side of the vehicle, and Agent Ramirez approached the front passenger door and made contact with the defendant. Agent Ramirez asked the defendant to step outside and put his hands on top of the vehicle, and the defendant complied. He then searched the defendant for weapons and other evidence and found a digital scale, cell phone, and wallet containing $560. Agent George searched the driver of the vehicle and found a black case containing a syringe, cotton balls, and methadone. All items were seized and given to Assistant Director Miller. Assistant Director Miller matched the serial numbers on twenty-five of the twenty dollar bills in the defendant's wallet to the serial numbers on the photocopied money given to Mr. Davis for use during the controlled buy. Both the driver and defendant were arrested.

The narcotics purchased during the controlled buy on March 18, 2015, were subsequently sent to the Tennessee Bureau of Investigation for testing. Agent Laura Cole testified at trial that she performed three confirmatory tests on the off-white powdery substance. All three tests identified the substance as 2.97 grams of heroin.

After calling Assistant Director Miller, Mr. Davis, Agent Ramirez, Agent George, and Agent Cole as witnesses, the State rested. The defendant moved for acquittal, and the trial court denied the motion. The defendant then called Candace Davis, Mr. Davis' ex-wife, as a character witness. When called by the State, Mr. Davis had testified that he does not use illegal drugs. Ms. Davis, however, testified that when they were married, she saw Mr. Davis use illegal drugs. Mr. Scruggs then declined to testify, and the defense rested.

The jury found the defendant guilty of selling heroin, delivering heroin, and possessing drug paraphernalia. Following a sentencing hearing, the trial court sentenced the defendant as a Range III persistent offender. The heroin convictions were merged, and the trial court ordered concurrent sentences of twenty-six years for the heroin convictions and 11 months and 29 days for the possession of drug paraphernalia conviction.

The defendant subsequently moved for a new trial, and the trial court denied the motion. This timely appeal followed. On appeal, the defendant argues the evidence is insufficient to support his convictions because the confidential informant did not provide trustworthy testimony. The defendant further argues his twenty-six year sentence is

excessive in light of the circumstances surrounding his arrest. We respectfully disagree and affirm the judgments of the trial court.

*Analysis*

## I.     Sufficiency of the Evidence

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans,* 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson,* 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas,* 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace,* 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the following rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State,* 405 S.W.2d 768, 771 (1966) (citing *Carroll v. State,* 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews,* 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown,* 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State,* 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or

circumstantial evidence.'" *State v. Dorantes,* 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson,* 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell,* 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State,* 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from it. *Dorantes,* 331 S.W.3d at 379 (citing *State v. Rice,* 184 S.W.3d 646, 662 (Tenn. 2006)). The extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Id.* This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id.*

Tennessee Code Annotated section 39-17-417 makes it a Class B felony to knowingly deliver or sell a Schedule I controlled substance. Tenn. Code Ann. § 39-17-407(a). Heroin is a Schedule I controlled substance. Tenn. Code Ann. § 39-17-406(c)(11). Pursuant to Tennessee Code Annotated section 39-17-425, it is a Class A misdemeanor to possess with intent to use drug paraphernalia. Tenn. Code Ann. §39-17-425(a).

In the present matter, the defendant challenges the credibility of Mr. Davis' testimony, arguing the evidence was insufficient to support all three convictions because they were based on the disingenuous testimony of a confidential informant who was facing drug charges himself. Our review of the record reveals that Assistant Director Miller gave the confidential informant, Mr. Davis, $500 to buy three grams of heroin. Assistant Director Miller searched Mr. Davis prior to the transaction and did not find any narcotics or money hidden on his body. Assistant Director Miller then monitored the controlled buy from a nearby location and watched the defendant get out of a car and interact with the defendant. Following the transaction, Mr. Davis gave Assistant Director Miller a substance later identified as 2.97 grams of heroin. Assistant Director Miller searched Mr. Davis for a second time and, again, did not find any narcotics or money hidden on his body. At the time of his arrest, the defendant had the $500 given to Mr. Davis in his wallet. The defendant also had a digital scale in his pocket.

Mr. Davis' testimony regarding the purchase of heroin from the defendant was corroborated by the testimony of the other witnesses called by the State. Moreover, the entire transaction was captured on audio and video recordings. All questions concerning the credibility of witnesses are to be resolved by the trier of fact and not the appellate court. *See State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003). By finding the defendant guilty, the jury accredited the confidential informant's testimony, and this Court will not reevaluate that finding on appeal. The evidence was sufficient to support the defendant's convictions. This issue lacks merit.

## II. Sentencing

The defendant further contends that when considering the circumstances of the defendant's arrest, including the fact he travelled to another county to sell heroin at the request of Mr. Davis, the trial court imposed an excessive sentence. Again, we disagree.

The trial court has broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any enhancement and mitigating factors, have been properly addressed." *State v. Bise,* 380 S.W.3d 682, 706 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.* at 707.

Under the 2005 amendments to the Sentencing Act, trial courts are to consider the following factors when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

(1)     The evidence, if any, received at the trial and the sentencing hearing;
(2)     The presentence report;
(3)     The principles of sentencing and arguments as to sentencing alternatives;
(4)     The nature and characteristics of the criminal conduct involved;
(5)     Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
(6)     Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
(7)     Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b). Enhancement factors to be considered by the trial court include, but are not limited to, whether "[t]he defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range" and whether "[t]he defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community." Tenn. Code Ann. § 40-35-114(1) and (8).

The trial court must state on the record the factors it considered and the reasons for the ordered sentence. Tenn. Code Ann. § 40-35-210(e); *Bise,* 380 S.W.3d at 706. "Mere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should

not negate the presumption [of reasonableness]." *Bise,* 380 S.W.3d at 705-06. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

As relevant here, a "persistent offender" is one who has received "[a]ny combination of five (5) or more prior felony convictions within the conviction class or higher or within the next two (2) lower felony classes." Tenn. Code Ann. § 40-35-107(a)(1). Persistent offenders must receive a sentence within Range III. Tenn. Code Ann. § 40-35-107(c). A Range III sentence for a Class B felony is "not less than twenty (20) nor more than thirty (30) years." Tenn. Code Ann. § 40-35-112(c)(2).

At his sentencing hearing, the defendant called several character witnesses and then made a statement on his own behalf. During his allocution, the defendant asked the trial court for mercy. Rather than accepting responsibility for his actions, the defendant complained it would be unfair for him to receive a lengthy sentence when his convictions arose as the result of a confidential informant's attempt to avoid a drug conviction.

Following the sentencing hearing, the trial court first considered the proper sentencing range. The defendant's presentence report shows five pertinent prior felonies – one prior Class B felony and four prior Class C felonies. The Class B felony was intent to sell a Schedule II drug and the four prior Class C felonies included two aggravated burglaries, an aggravated assault, and a robbery. Based on his record, the trial court sentenced the defendant as a Range III persistent offender and found the appropriate sentencing range to be twenty to thirty years.

In addition to the convictions used to establish his sentencing range, the defendant had a prior accessory after the fact conviction, a Class E felony, and misdemeanor false imprisonment and weapons convictions. Also, at least one of the defendant's prior felony convictions occurred while he was on parole. Based on these enhancement factors and statements made by the defendant concerning his conviction, the trial court sentenced the defendant to twenty-six years of incarceration to be served at forty-five percent, stating:

> First I have to determine what the length of the sentence is. Given even the minimum length of the sentence, there is not any consideration for alternative sentencing here.
>
> So, I am looking at at least two enhancement factors that apply and at least three other convictions, one of which is a felony, that apply to Mr. Scruggs. I think an appropriate sentence in this particular case, after casting aside the convictions that get us to Range III, would be a length of 26 years at 45 percent.

I think easily we can justify the 11 months and 29 days at 75 percent on the misdemeanor. I will run it concurrently. I don't think we should have those things, but given the gravity of the principle offense in this cause I will run those concurrent to one another since it is a 26 year sentence at 45 percent.

I am going to make some remarks on Mr. Scruggs' allocution. I didn't hear any admission of guilt. What I hear was that somebody called him down here and kind of made him do it.

So, with your family sitting here, Mr. Scruggs, I am going to dispel that. The facts of the case were that the drug task force was working with a criminal informant, a confidential informant, whatever you want to call it. This transaction, the sale was videotaped. We watched that videotape at trial.

$500 was exchanged for these drugs in marked bills, meaning that the serial numbers were recorded prior to giving that to the confidential informant to buy the dope from you. And 10 minutes later you are stopped down the road in the vehicle that pulled up to get this dope and you were arrested and lo and behold those same $500 marked bills were on your person.

So, I mean to blame this on anybody else but yourself . . . is disingenuous.

Our review of the record indicates that the trial court imposed this sentence after properly considering the evidence adduced at trial and the sentencing hearing, the presentence report, the principles of sentencing, the parties' arguments, the nature and characteristics of the crime, the statements of the defendant, and the evidence of enhancing factors. The trial court noted that the defendant had prior criminal convictions in addition to those used to establish the sentencing range. The trial court further found the defendant has violated the terms of community release in the past and failed to take any responsibility for his most recent criminal behavior. Based on these conclusions, the trial court imposed its sentence.

When affording a presumption of reasonableness to the within-range sentence imposed by the trial court, we affirm it. Even in the absence of enhancement factors, the defendant is not entitled to the minimum sentence. Rather, the trial court may set a sentence anywhere within the applicable range so long as the sentence is consistent with

the purposes and principles of the Sentencing Act. *See State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008) (there is no presumptive sentence). The trial court did not abuse its discretion when sentencing the defendant, a Range III persistent offender, to an effective sentence of twenty-six years in confinement. The defendant is not entitled to relief on this issue.

## *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
J. ROSS DYER, JUDGE